**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JASON HARTWICK,

              Plaintiff,

     -against-

ANTHONY ANNUCCI, STEVEN CLAUDIO,
ANA ENRIGHT, TINA STANFORD, WALTER
WILLIAM SMITH, JOSEPH P. CRANGLE,
ELLEN EVANS ALEXANDER, MARC
COPPOLA, OTIS CRUSE, TANA AGOSTINI,
ERIK BERLINER, TYECE DRAKE, CARYNE
DEMOSTHENES, CHARLES DAVIS, CAROL
SHAPIRO, ROBERT HODSON, TAMMY
GRONAU, REGINA ORSAIO, KENNETH
PALMER, MICHAEL WRIGHT, SPO GREEN,
PAUL RIGBY, and JASON W. GAVRAS,

              Defendants.

Case No. _____ 5:20-CV-0408 (DNH/TWD)


**COMPLAINT**

Plaintiff JASON HARTWICK, for his Complaint in this matter, alleges the following:

### NATURE OF THE ACTION

1.     This is a lawsuit pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's First and Fourth Amendment rights.  Plaintiff also asserts illegal search in violation of the New York State Constitution.

2.     Plaintiff, a convicted sex offender, was on post-release supervision ("PRS") when Defendants unconstitutionally imposed and enforced a condition of PRS requiring that Plaintiff have no access to the internet.  When Defendants found a smartphone in a car on Plaintiff's premises, they charged him with violation of that condition.  Plaintiff was required to serve an 18-month sentence for this PRS violation.  To add insult to injury, after being deprived of his personal freedom for 18 months merely for possessing a phone with internet access, an activity that the U.S.

Constitution protects, Plaintiff was subjected to the same condition upon release, and even after a court ordered the condition be struck, Defendants defied the court order and continued to deprive Plaintiff of his constitutional rights.

## JURISDICTION AND VENUE

3.    This Court has subject-matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331.  This Court has subject-matter jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367.

4.    This Court has personal jurisdiction over all Defendants because all are citizens of New York State.

5.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because some or all of the Defendants reside in this district.  Venue is also proper pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events and omissions that give rise to this claim occurred in this district.

## THE PARTIES

6.    Plaintiff JASON HARTWICK is a citizen of New York State.

7.    Defendant ANTHONY ANNUCCI is the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS").  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

8.    Defendant STEVEN CLAUDIO was the Deputy Commissioner for Community Supervision for DOCCS at certain relevant times. He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

9.    Defendant ANA ENRIGHT is the current Deputy Commissioner for Community Supervision for DOCCS.  She is being sued in her individual capacity.  On information and belief, she is a citizen of New York State

10.     Defendant TINA STANFORD is the chair of the New York State Parole Board. She is being sued in her individual capacity.  On information and belief, she is a citizen of New York State.

11.     Defendant WALTER WILLIAM SMITH is a Parole Board member.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

12.     Defendant JOSEPH P. CRANGLE is a Parole Board member. He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

13.     Defendant ELLEN EVANS ALEXANDER is a Parole Board member.  She is being sued in her individual capacity. On information and belief, she is a citizen of New York State.

14.     Defendant MARC COPPOLA is a Parole Board member.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

15.     Defendant OTIS CRUSE is a Parole Board member.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

16.     Defendant TANA AGOSTINI is a Parole Board member. She is being sued in her individual capacity.  On information and belief, she is a citizen of New York State.

17.     Defendant ERIK BERLINER is a Parole Board member.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

18.     Defendant TYECE DRAKE is a Parole Board member.  She is being sued in her individual capacity. On information and belief, she is a citizen of New York State.

19.     Defendant CARYNE DEMOSTHENES is a Parole Board member.  She is being sued in her individual capacity.  On information and belief, she is a citizen of New York State.

20.     Defendant CHARLES DAVIS is a Parole Board member.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

21.     Defendant CAROL SHAPIRO was a Parole Board member on March 7, 2019, when the Parole Board reimposed the unconstitutional condition on the Plaintiff.  She is being sued in her individual capacity. On information and belief, she is a citizen of New York State.

22.     Defendant ROBERT HODSON is a Parole Officer.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

23.     Defendant TAMMY GRONAU is a Parole Officer.  She is being sued in her individual capacity.  On information and belief, she is a citizen of New York State.

24.     Defendant REGINA ORSAIO is a Parole Officer.  She is being sued in her individual capacity.  On information and belief, she is a citizen of New York State.

25.     Defendant KENNETH PALMER is a Supervising Parole Officer ("SPO").  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

26.     Defendant MICHAEL WRIGHT is a Parole Officer.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

27.     Defendant SPO GREEN is a Supervising Parole Officer.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

28.     Defendant PAUL RIGBY is the Bureau Chief for the Syracuse Belt Area Office of DOCCS.  He is being sued in his individual capacity.  On information and belief, he is a citizen of New York State.

29.     Defendant JASON W. GAVRAS was the Bureau Chief for the Syracuse Belt Area Office of DOCCS at the time Plaintiff was arrested for his alleged PRS violation.  He is being sued

in his individual capacity.  On information and belief, he remains a DOCCS employee and is a citizen of New York State.

## THE FACTS

30.     On October 13, 2009, Plaintiff was convicted of First Degree Attempted Rape.  He was sentenced to seven years in prison plus ten years PRS.

31.     On June 8, 2015, Plaintiff was released to PRS.  This release included a great many conditions, one of which was that Plaintiff could not own, use, possess, purchase, or have control of any computer, computer-related material, electronic storage devices, communications, and/or the internet without prior written permission from his parole officer (the "E-STOP Condition"). State law requires this condition for level-3 sex offenders, sex offenders whose victim was a minor, and sex offenders who utilize the internet for their crime.  However, the Supreme Court held that the prohibited conduct was constitutionally protected in *Packingham v, North Carolina*, 137 S.Ct. 1730 (2017). This case clearly established that Plaintiff could not be subjected to this condition.

32.     Plaintiff was initially designated a level 3 sex offender at his hearing pursuant to the Sex Offender Registration Act ("SORA").  This rendered Plaintiff subject to the E-STOP condition at the time of his release.  However, Plaintiff appealed his designation, and the designation was dropped to Level 2 in April 2017.  Plaintiff's victim was not a minor, nor did he use the internet in his crime of conviction.  Thus, he was no longer subject to the mandatory E-STOP condition.  Nonetheless, Plaintiff's E-STOP Condition was not removed upon the reduction of his SORA level, nor was it removed upon the issuance of the *Packingham* decision.

33.     Soon after his release, Plaintiff obtained employment with Kik Custom Products ("Kik"), a company that manufactures household goods.  He started as a packer at minimum wage.

He quickly rose to forklift operator and then to forklift group leader.  He received a pay raise with each successive promotion.

34.     In April 2016, Plaintiff was offered another promotion at Kik, this time to a supervisory position.  This position required Plaintiff to have a cell phone with internet access and a camera.  Plaintiff promptly asked his Parole Officer for permission to purchase such a device.  At the time, Plaintiff's parole officer was Thomas Distefano ("PO Distefano").  PO Distefano initially stated that he would get back to Plaintiff, presumably to confer with his Supervising Parole Officer, Defendant Palmer.  On information and belief, PO Distefano consulted with Defendant Palmer, and Palmer approved the device.  The next day, PO Distefano called Plaintiff back and approved Plaintiff's purchase and use of the smartphone.  PO Distefano explained that the device would be subject to inspection to ensure that Plaintiff did not use it for pornographic or other illicit material.  Plaintiff understood and agreed.

35.     In reliance on PO Distefano's approval, Plaintiff purchased a smartphone and accepted the promotion at Kik.  The new position earned $18.82 per hour with a guarantee of 55 hours per week, thereby including 15 hours of overtime at time-and-a-half pay each week.

36.     Upon information and belief, at the time that PO Distefano gave his approval, the standard practice of all DOCCS parole officers, when approving anything that required written permission, was to tell the parolee orally that permission was granted and then to record the grant of permission in DOCCS's computer system.  Parole Officers consistently tell their parolees that, despite the official requirement of a written condition, that oral permission is sufficient.  Plaintiff had no access to this system and had to rely on PO Distefano's diligence in recording the grant of permission.  Distefano had an obligation to record his approval on the DOCCS computer system.  He failed to do so.

37.     In October 2016, Defendant Orsaio administered a polygraph test to Plaintiff.  Upon completion, Defendant Orsaio told Plaintiff that he had passed the test.

38.     On September 8, 2017, Defendants Hodson, Orsaio, and Gronau came to Plaintiff's home with no prior warning.  They informed Plaintiff that they were there to search his premises. The determination to conduct the search had been made by Defendant Palmer based on Plaintiff's alleged failure of the polygraph test that Plaintiff had taken nearly a year earlier.  This was the same test that Defendant Orsaio had told Plaintiff he had passed.

39.     On information and belief, the alleged failure of the polygraph test was merely a pretext to conduct an arbitrary, capricious search.  In fact, as Orsaio had initially informed Plaintiff, Plaintiff had passed the polygraph test.  The nature of polygraph tests makes the pass/fail result highly subjective, and Orsaio changed her conclusion nearly a year after the test solely to provide a pretext for the arbitrary, capricious search.

40.     The search conducted by Defendants Hodson, Orsaio, and Gronau and specifically authorized by Defendant Palmer bore no rational relation to the performance of these Defendants' duties as parole officers.

41.     Although Plaintiff did not actively resist the search, Plaintiff never gave his consent for the search, nor was he ever asked to provide consent for the search.

42.     Immediately upon entering Plaintiff's home, Defendant Hodson handcuffed Plaintiff despite Plaintiff's lack of resistance to the search.  Defendants Gronau, Osaiao, and Hodson searched Plaintiff's home and his vehicle, which was located on the premises.  In Plaintiff's vehicle, they discovered a smartphone with internet access, the same phone for which Plaintiff had acquired permission from Distefano.

43.     When Defendant Hodson asked Plaintiff about the smartphone, Plaintiff truthfully stated that he had obtained permission for the device from PO Distefano.  Subsequently, when writing their report, Defendants Hodson and Palmer accused Plaintiff of having falsely stated that Defendant Gronau had given permission.  This alleged deception, which was really no deception at all, provided a basis on which Defendants Palmer and Gavras recommended that Plaintiff return to DOCCS custody rather than remain on any form of supervised release.

44.     At the time of the search, PO Golambeski was Plaintiff's Parole Officer, as he had been since July 2017.  Defendant Gronau had been Plaintiff's Parole Officer for a short time before that.  By then, PO Distefano had retired from DOCCS. On information and belief, Defendant Palmer, who was the SPO in charge of Plaintiff's case at both the time Plaintiff requested permission for the smartphone and at the time of the search, knew all about the fact that Plaintiff had permission for the smartphone.  Nonetheless, when Defendants Gronau, Osaiao and Hodson found the smartphone, they arrested Plaintiff on the spot and escorted him to the county jail., where he remained until October 30, 2017.

45.     Defendants charged Plaintiff with several PRS violations.  Defendants Hodson and Palmer signed the charging statement.  Upon information and belief, Defendants Hodson, Palmer, Gronau, Orsaio, and Gavras personally participated in the decision to charge Plaintiff.

46.     Plaintiff's violation hearing occurred on October 16, 2017.  Having been told that there was no record of Distefano's granting him permission for use of the smartphone, and also being informed that prosecutors would seek at least three years in DOCCS custody for the alleged violation, Plaintiff pled guilty to having had possession of a cell phone that had access to a social networking website with the ability to communicate with other individuals.  The hearing officer sentenced Plaintiff to return to DOCCS custody for 18 months.

8

47.     At the time of his guilty plea, Plaintiff knew nothing about the case of *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017), which clearly established that Plaintiff's conduct in obtaining a smartphone was constitutionally protected.  Defendants, however, knew or should have known that enforcing this condition of PRS was clearly established unconstitutional conduct.

48.     On information and belief, Defendants Annucci and Claudio created the policy that, *Packingham* notwithstanding, DOCCS would continue to enforce the unconstitutional condition against anyone to whom the state statute applied or anyone else on whom the Parole Board imposed the condition.  They instructed their subordinates to continue to enforce the condition.  The other defendants who enforced this condition against Plaintiff were following that policy.

49.     Plaintiff appealed the hearing officer's judgment and ultimately filed an Article 78 proceeding challenging the judgment.  These appeals were unsuccessful.  These appeals did not address the constitutionality of the condition.

50.     At the time Plaintiff was taken into custody for the PRS violation, Plaintiff was earning $1176.25 per week, including overtime pay.  As a result of being taken into custody, Plaintiff lost this job.  He lost wages of $91,747.50 in those eighteen months.  In addition, even upon release, Plaintiff was unable to return to Kik.

51.     Upon release, obtaining employment was extremely difficult for Plaintiff without internet access.  In May 2019, Plaintiff obtained a part-time job that paid $14 per hour.  He was guaranteed only 15 hours per week, and he generally earned approximately $230 per week.  It took him until October 2019 to obtain full-time employment at Natrium Products for $17.25 per hour, a job he maintains to this day.

52.     Thus, Plaintiff lost an additional $1176.25 per week from March to May 2019 and an additional $950 per week from May to October 2019.  He has lost and continues to lose

additional pay since then because his current pay averages only $759 per week, which is $417.25 per week lower than it would have been had he remained at Kik. These economic damages continue to the present day.

53.    Plaintiff also lost his liberty for 18 months as a result of Defendants' unconstitutional acts of taking him into custody and charging him with violation of an unconstitutional condition of PRS.

54.    On March 7, 2019, Plaintiff was released from DOCCS custody with a new set of conditions.

55.    This new set of conditions continued to include the E-STOP Condition that Plaintiff not own, use, possess, purchase, or have control of any computer, computer-related material, electronic storage devices, communications, and/or the internet without prior written permission from his parole officer. Even though Plaintiff was by this time not subject to the state law requiring this condition, the paperwork indicates that the Parole Board imposed the condition pursuant to the (unconstitutional) state statute.

56.    As members of the Parole Board, Defendants Stanford, Smith, Crangle, Alexander, Coppola, Cruse, Agostini, Berliner, Drake, Demothsenes, Davis, and Shapiro (collectively the "Parole Board") all personally participated in the imposition of this unconstitutional condition. Defendant Wright, as Plaintiff's current PO, and Defendant Green, as the current SPO, and Defendant Rigby, as the Bureau Chief, personally enforced this unconstitutional condition.

57.    On information and belief, Defendants Annucci, Enright, and Rigby created and implemented the policy that, *Packingham* notwithstanding, DOCCS would continue to enforce the unconstitutional condition against anyone on whom the condition had been imposed. These defendants instructed their subordinates to continue to enforce the condition.

58.     Plaintiff attempted to appeal some of his parole conditions administratively, including the E-STOP Condition.  He received a letter from Defendant Stanford that his parole conditions were unappealable.

59.     On January 12, 2019, having been notified in advance of what his release conditions would be, Plaintiff filed an Article 78 petition in Supreme Court, Cortland County, challenging several of his conditions, including the E-STOP Condition.

60.     On July 19, 2019, the Honorable Molly Reynolds Fitzgerald issued her decision. Relying heavily on *Packingham*, she ruled that the E-STOP Condition violated the First Amendment.  Judge Fitzgerald struck that condition.

61.     Even *after* the court had struck this unconstitutional condition, Defendants defied the court order and continued to enforce the condition.  Defendants continued to tell Plaintiff that he could not possess a smartphone.  Defendant Rigby personally told Plaintiff that they would not follow the court order because they intended to appeal it.  However, no such appeal ever occurred, nor was a stay sought.  Indeed, such an appeal or request for stay would have been frivolous in light of *Packingham*.

62.     Without a smartphone, Plaintiff suffered considerable damages.  If he had been able, he would have used the smartphone to video chat with his son, whom he sees only once a week pursuant to his visitation rights.  Also, obtaining employment without internet access was exceedingly difficult.  Plaintiff opened his own construction company, but without the ability to take photographs of his work and post them on the internet, he found it extremely difficult to market his business, and the business met with limited success at best.

63.     On August 27, 2019, Plaintiff filed another Article 78 petition seeking a finding of contempt of court for Defendants' failure to remove the unconstitutional condition even after the

11

court ruling.  Only after Plaintiff filed this second Article 78 petition did Defendants finally remove the condition.

64.     On February 13, 2020, the court dismissed the Article 78.  The court ruled that it lacked subject-matter jurisdiction to award any monetary damages, and the request to remove the condition had become moot.

## COUNT ONE
42 U.S.C. § 1983 (Fourth Amendment)
Against Defendants Gronau, Hodson, Orsaio, and Palmer

65.     Plaintiff realleges paragraphs 1 through 64 as if the same were fully set forth at length herein.

66.     By conducting an arbitrary and capricious search, based solely on the false premise that Plaintiff had failed a polygraph test that he had, in fact, passed, Defendants Gronau, Hodson, Orsaio, and Palmer violated Plaintiff's Fourth Amendment rights.

67.     By violating Plaintiff's Fourth Amendment rights, Defendants Gronau, Hodson, Orsaio, and Palmer began a chain of events that proximately caused Plaintiff to lose his job and lose his liberty for 18 months.  Plaintiff suffered both economic losses and extreme emotional distress.

## COUNT TWO
Illegal Search
Against Defendants Gronau, Hodson, Orsaio, and Palmer

68.     Plaintiff realleges paragraphs 1 through 67 as if the same were fully set forth at length herein

69.     Under New York law, a search by a parole officer is illegal when the search bears no rational relation to the parole officer's duties.  N.Y. Const. Art. 1 § 12.

70.     Defendants Gronau, Hodson, Orsaio, and Palmer conducted a search that was completely arbitrary and capricious.  The search bore no rational relation to their duties as parole

officers.  They conjured up a disingenuous pretext for the search, namely that Plaintiff had failed a polygraph test that he had, in reality, passed.

71.     Defendants Gronau, Hodson, Orsaio, and Palmer began a chain of events that proximately caused Plaintiff to lose his job and lose his liberty for 18 months.  Plaintiff suffered both economic losses and extreme emotional distress.

72.     By violating Plaintiff's rights under the New York State Constitution, Defendants Gronau, Hodson, Orsaio, and Palmer began a chain of events that proximately caused Plaintiff to lose his job and lose his liberty for 18 months.  Plaintiff suffered both economic losses and extreme emotional distress.

## COUNT THREE
42 U.S.C. § 1983 (First Amendment)
Against Defendants Annucci, Claudio, Gronau, Hodson, Orsaio, Palmer and Gavras

73.     Plaintiff realleges paragraphs 1 through 72 as if the same were fully set forth at length herein.

74.     By enforcing an unconstitutional condition, Defendants Annucci, Claudio, Gronau, Hodson, Orsaio, and Palmer violated Plaintiff's First Amendment rights.

75.     In violation of Plaintiff's First Amendment rights, these defendants set in motion a chain of events that led to Plaintiff's unconstitutional incarceration for 18 months.  Defendant was arrested without probable cause and taken to county jail.  He lost his job.  He suffered economic damages and extreme emotional distress.

## COUNT FOUR
42 U.S.C. § 1983 (Fourth Amendment)
Against Defendants Annucci, Claudio, Gronau, Hodson, Orsaio, Palmer and Gavras

76.     Plaintiff realleges paragraphs 1 through 75 as if the same were fully set forth at length herein.

77.     By arresting Plaintiff immediately upon finding Plaintiff's smartphone, Defendants Gronau, Hodson, and Orsaio committed an illegal seizure of Plaintiff's person.  This violated Plaintiff's Fourth Amendment rights to be free from illegal search and seizure.

78.     Defendants Annucci and Claudio created the policy that all parolees would be immediately arrested upon the finding of anything that might suggest probable cause to believe that such parolee had committed a PRS violation.  Defendants Gronau, Hodson, and Orsaio were following that policy when they arrested Plaintiff.  Plaintiff did not present a flight risk, nor was there any other exigent circumstance that required Plaintiff's immediate arrest.

79.     By arresting Plaintiff in violation of his constitutional rights, these Defendants caused Plaintiff to lose his job and to lose his liberty.  The chain of events set in motion ultimately caused Plaintiff to lose his liberty for 18 months.  Plaintiff suffered economic loss and extreme emotional distress.

### COUNT FIVE
42 U.S.C § 1983 (First Amendment)
Against Defendants Stanford, Smith, Crangle, Alexander, Coppola, Cruse, Agostini, Berliner, Drake, Demothsenes, Davis, and Shapiro

80.     Plaintiff realleges paragraphs 1 through 79 as if the same were fully set forth at length herein.

81.     Upon the conclusion of Plaintiff's 18-month incarceration, the Parole Board reimposed the same unconstitutional condition upon Plaintiff.  By reimposing this condition, these defendants violated Plaintiff's First Amendment rights.

82.     As a result of this continued constitutional violation, Plaintiff suffered considerable damages.  If he had been able, he would have used the smartphone to video chat with his son, whom he sees only once a week pursuant to his visitation rights.  Also, obtaining employment without internet access was exceedingly difficult.  Plaintiff opened his own construction company,

but without the ability to take pictures of his work and post it on the internet, he found it extremely difficult to market his business, and the business met with limited success at best.

**COUNT SIX**
42 U.S.C. § 1983 (First Amendment)
Against Defendants Wright, Green, Rigby, Annucci, and Enright

83.     Plaintiff realleges paragraphs 1 through 82 as if the same were fully set forth at length herein.

84.     Defendants Annucci and Enright created the policy that sex offenders such as Plaintiff would be subjected to the unconstitutional condition of prohibiting devices with internet access, *Packingham* notwithstanding.  Defendants Wright, Green, and Rigby followed that policy and enforced the condition against Plaintiff.

85.     By enforcing the unconstitutional condition against Plaintiff, these defendants violated Plaintiff's First Amendment rights.

86.     As a result of this continued constitutional violation, Plaintiff suffered considerable damages.  If he had been able, he would have used the smartphone to video chat with his son, whom he sees only once a week pursuant to his visitation rights.  Also, obtaining employment without internet access was exceedingly difficult.  Plaintiff opened his own construction company, but without the ability to take pictures of his work and post it on the internet, he found it extremely difficult to market his business, and the business met with limited success at best

87.     Even after a court had stricken this unconstitutional condition, Defendants Wright, Green and Rigby continued to enforce the condition in violation of that court order.  This violation was particularly egregious.

**COUNT SEVEN**
Punitive Damages
Against Defendants Orsaio, Gronau, Hodson, Palmer, Wright, Green, and Rigby

88.     Plaintiff realleges paragraphs 1 through 87 as if the same were fully set forth at length herein.

89.     The behavior of Defendants Orsaio, Gronau, Hodson, Palmer, Wright, Green, and Rigby are particularly egregious and outrageous.  Such behavior, as described above, warrants punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff requests that the Court grant the following relief:

A.     Award compensatory damages for Plaintiff's economic losses in the amount of $121,107.50 plus an additional $417.25 for every week from October 2019 to the date of judgment;

B.     Award compensatory damages in an amount to be determined at trial for Plaintiff's non-economic damages, particularly his loss of liberty;

C.     Award punitive damages for certain particularly egregious behavior by Defendants Orsaio, Gronau, Hodson, Palmer, Wright, Green, and Rigby in an amount to be determined at trial;

D.     Award reasonable attorneys' fees, together with the cost of this action;

E.     Grant such other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action.

Dated: April 7, 2020
      New York, New York

                Respectfully submitted,

                /s/ Joshua Pepper
                Joshua Pepper
                43 W 43 Street, Suite 258
                New York, New York 10036-7424
                212-804-5768
                jpepper@jpepperesq.com