UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JASON HARTWICK,

                          Plaintiff,

           -v-                        5:20-CV-408

ANTHONY ANNUCCI; STEVEN CLAUDIO;
ANA ENRIGHT; TINA STANFORD; WALTER
WILLIAM SMITH; JOSEPH P. CRANGLE;
ELLEN EVANS ALEXANDER; MARC
COPPOLA; OTIS CRUSE; TANA AGOSTINI;
ERIK BERLINER; TYECE DRAKE; CARYNE
DEMOSTHENES; CHARLES DAVIS; CAROL
SHAPIRO; ROBERT HODSON; TAMMY
GRONAU; REGINA ORSAIO; KENNETH
PALMER; MICHAEL WRIGHT; SPO GREEN;
PAUL RIGBY; and JASON W. GAVRAS,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

LAW OFFICE OF JOSHUA PEPPER, PLLC    JOSHUA PEPPER, ESQ.
Attorneys for Plaintiff
30 Wall Street-8th Floor
New York, New York 10005

HON. LETITIA JAMES              BRIAN W. MATULA, ESQ.
New York State Attorney General       Assistant Attorney General
Attorneys for Defendants
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

### <u>MEMORANDUM–DECISION and ORDER</u>

## I.    <u>INTRODUCTION</u>

       On April 7, 2020, plaintiff Jason Hartwick ("Hartwick" or "plaintiff") brought the present

complaint alleging violations of rights protected by the constitutions of both the United States

and the State of New York.  Plaintiff, a convicted sex offender, alleges that his conditions of parole, which previously included stark restrictions of his rights to access the internet, violated his First Amendment rights.  By extension, he argues that New York State's enforcement of those measures against him was unconstitutional.

The defendants saddled with Hartwick's allegations are disparate, but can be grouped into a few distinct categories.  First, there are three defendants among positions of authority at New York State's Department of Corrections and Community Supervision ("DOCCS"), including DOCCS Commissioner Anthony Annucci ("Annucci"), former Deputy Commissioner for Community Supervision Steven Claudio ("Claudio"), and Ana Enright ("Enright") who currently occupies Claudio's former role.  Second, several defendants are members of the New York State Parole Board (the "Board"):  defendant Tina Stanford is the Parole Board's chair, while defendants Walter William Smith, Joseph P. Crangle, Ellen Evans Alexander, Marc Coppola, Otis Cruse, Tana Agostini, Erik Berliner, Tyece Drake, Caryne Demosthenes, Charles Davis, and Carol Shapiro were all Board members tasked with considering plaintiff for parole (together "the Board defendants").

The third group of Hartwick's defendants are parole officers, including Robert Hodson ("Hodson"), Tammy Gronau ("Gronau"), Regina Orsaio ("Orsaio"), and Michael Wright ("Wright"), in addition to Supervising Parole Officers Kenneth Palmer ("Palmer") and SPO Green.  The fourth and final grouping of defendants includes defendants Paul Rigby ("Rigby") and Jason W. Gavras ("Gavras"), who serve and served, respectively, as Bureau Chief for the Syracuse Belt Area Office of DOCCS (together "defendants").

Hartwick's complaint brings six causes of action[1]:  (1) a Fourth Amendment violation under 42 U.S.C. § 1983 ("§ 1983")[2] against Gronau, Hodson, Orsaio, and Palmer; (2) an illegal search in violation of N.Y. CONST. art. 1 § 12 against the same defendants; (3) a First Amendment § 1983 claim against defendants Annucci, Claudio, Gronau, Hodson, Orsaio, Palmer, and Gavras; (4) a Fourth Amendment § 1983 claim against the same defendants; (5) a First Amendment § 1983 claim against the Board defendants; and (6) a First Amendment § 1983 claim against defendants Wright, Green, Rigby, Annucci, and Enright. Defendants have moved to dismiss the complaint in its entirety and against all defendants for lack of subject matter jurisdiction and failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  That motion having been fully briefed, it will now be decided on the basis of the parties' submissions without oral argument.

## II.    **BACKGROUND**

On October 13, 2009, Hartwick was convicted of First Degree Attempted Rape in New York.[3]  *See* Dkt. 1 ("Compl."), ¶ 30.  For that crime, he was sentenced to seven years' imprisonment with an additional ten years of post-release supervision ("PRS") to follow his release.  *Id.*  On June 8, 2015, plaintiff was granted parole, subject to several conditions imposed by the Board.  *Id.* ¶ 31.

---

[1] Plaintiff also brings a seventh cause of action for punitive damages, but that is not a freestanding claim absent a valid claim for compensatory damages.  *Excelsior Cap. LLC v. Allen*, 536 F. App'x 58, 60 (2d Cir. 2013) (summary order) (citing *Hubbell v. Trans World Life Ins. Co. of N.Y.*, 408 N.E.2d 918, 919 (1980)).

[2] Section 1983 allows a plaintiff to bring civil rights claims against state actors in their individual capacity.  42 U.S.C. § 1983.  However, two elements must be present for all § 1983 claims:  "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

[3] The facts are taken from the amended complaint and any and all documents attached to it, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).  Accordingly, the Court will not rely on any exhibits attached to the parties' briefs except as otherwise noted.

Among Hartwick's PRS conditions was a prohibition against plaintiff's owning, purchasing, possessing, or controlling "any computer, computer-related material, electronic storage devices, communications, and/or the internet without prior written permission from his parole officer . . . ."  Compl. ¶ 31.  State law mandates this restriction for all level 3 sex offenders.  *Id.*

Apparently, after Hartwick's release from prison, he achieved employment and quickly rose up the ranks at his new vocation.  Compl. ¶ 33.  In April of 2016, plaintiff alleges that his rise through the company rewarded him with another promotional opportunity into a supervisory role.  *Id.* ¶ 34.  But the job came with a catch: should plaintiff accept it, he would need to own a cell phone equipped with internet access and a camera.  *Id.*  Plaintiff claims that he spoke to Thomas Distefano ("Distefano"), his parole officer at the time (who is not a defendant in this case) to request permission to purchase a phone meeting the requirements of his potential new role.  *Id.*  Plaintiff alleges that Distefano consulted with his Supervising Parole Officer, defendant Palmer, who approved plaintiff to purchase the phone.  *Id.*

Upon allegedly getting his parole officer's permission, Hartwick purchased a smartphone and accepted the promotion.  Compl. ¶ 35.  According to plaintiff, Distefano verbally informed him that he had permission to purchase the phone, and at that point it was Distefano's obligation to record that approval in DOCCS's computer system.  *Id.* ¶ 36.  But plaintiff alleges that he failed to ever make a record of approving plaintiff's owning the phone. *Id.*

In October of 2016, Hartwick took a polygraph test administered by defendant parole officer Orsaio.  Compl. ¶ 37.  Plaintiff alleges that Orsaio told him that he had passed the test. *Id.*  Nearly a year later, on September 8, 2017, defendant parole officers Hodson, Orsaio and Gronau arrived unexpectedly at plaintiff's home to conduct a search.  *Id.* ¶ 38.  Plaintiff

alleges that Palmer sent the parole officers under his supervision to search plaintiff's home based on his failing the same prior polygraph test Orsaio had told him that he had passed. *Id.*

Hartwick neither resisted nor consented to the search.  Compl. ¶ 41.  Despite plaintiff's lack of resistance, he claims that Hodson handcuffed him while the parole officers searched his home and car.  *Id.* ¶ 42.  Predictably, the parole officers found plaintiff's phone in his vehicle.  *Id.*

When asked about the phone, Hartwick told Hodson that Distefano had given him permission to purchase the phone.  Compl. ¶ 43.  Nevertheless, the parole officers promptly arrested him for possessing a cell phone in violation of his PRS conditions and took him to county jail, where he would remain until October 30, 2017.  *Id.* ¶ 44

In the written report describing the search, Hodson and Palmer accused Hartwick of claiming falsely that Gronau had been the one to grant him permission to have the phone. Compl. ¶ 43.  Using that allegation, Palmer and his supervisor, then-DOCCS Syracuse Belt Area Office Bureau Chief Gavras, recommended that plaintiff return to DOCCS custody.  *Id.* Plaintiff claims that Palmer knew that plaintiff had been given permission to purchase the phone at the time of his arrest.  *Id.* ¶ 44.

On October 16, 2017, Hartwick's parole violation hearing took place.  Compl. ¶ 46. Fearing the potential penalty of three years' imprisonment for his violation of possessing a phone with access to the internet, plaintiff pled guilty.  *Id.*  In return, he received a sentence of eighteen months' imprisonment.  *Id.*

Concurrently, 2017 saw two substantial changes to Hartwick's situation that he believes opened the door to easing his onerous internet restrictions.  First, plaintiff successfully appealed his designation as a level 3 sex offender, and his designation was

5

reduced to level 2 in April of 2017.  Compl. ¶ 32.  Second, the Supreme Court decided *Packingham v. North Carolina* in June of that year.  137 S. Ct. 1730, (2017).  In that case, the Supreme Court held that a blanket denial of access to social media for convicted sex offenders violates the First Amendment rights of those convicted.  *Id.* at 1736-37.

Hartwick alleges that although he did not know about *Packingham* at the time of his guilty plea, defendants should have.  Compl. ¶ 47.  Nevertheless, he alleges that DOCCS Commissioner defendant Annucci and his Deputy Commissioner of Community Supervision, defendant Claudio, created a policy and instructed their subordinates to continue to enforce the parole conditions that plaintiff believes *Packingham* outlawed.  *Id.* ¶ 48.  He also alleges that defendants Rigby and Enright, as Claudio's successor, carried this policy forward.  *Id.* ¶ 57.

Unsatisfied with his sentence, Hartwick filed an Article 78 proceeding[4] challenging the validity of his imprisonment, which ultimately proved to be unsuccessful.  Compl. ¶ 49.  However, his challenge did not address the constitutionality of the condition that he allegedly violated.  *Id.*

On March 7, 2019, Hartwick was released from prison with new PRS conditions.  Compl. ¶ 54.  Despite plaintiff's reduction to a level 2 sex offender, the Board defendants nevertheless again restricted plaintiff from owning or possessing internet-capable devices.  *Id.* ¶ 55.  After plaintiff's release, defendant Wright has served as plaintiff's parole officer, with defendant Green working as Wright's Supervising Parole Officer and defendant Rigby working as the new Syracuse Bureau Chief.  *Id.* ¶ 56.

At last, on January 12, 2019, having received advance notice of his parole conditions, Hartwick filed a second Article 78 proceeding challenging the constitutionality of the

---

[4] An Article 78 proceeding is a special proceeding under New York law which allows a petitioner to challenge the legality of state actions.  N.Y. CPLR § 7803.

technological restrictions he faced.  Compl. ¶ 59.  On July 19, 2019, plaintiff alleges that condition was overruled as unconstitutional.  *Id.* ¶ 60.  Nevertheless, plaintiff alleged that his parole officers all the way up the ladder to Rigby continued to tell plaintiff that he was not to have a device with the capability of accessing the internet in the absence of express permission.  *Id.* ¶ 61.  It was only on August 27, 2019, when plaintiff filed his third Article 78 petition, that defendants removed the condition precluding him from owning a cell phone. *Id.* ¶ 63.

On February 13, 2020, Hartwick's Article 78 proceeding was dismissed as lacking subject-matter jurisdiction to award damages.  Compl. ¶ 64.  This Court of course has no such limitation, and plaintiff filed the present complaint on April 7, 2020.  Dkt. 1.  On August 17, 2020, defendants moved to dismiss the complaint in its entirety.  Dkt. 35.

## III.   LEGAL STANDARD

### A.  Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

"In determining the existence of subject matter jurisdiction, a district court may consider evidence outside the pleadings."  *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113).  "Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first."  *Id.* at 138 (citations omitted).

### B. Failure to State a Claim

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540.  The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## IV.   DISCUSSION

Defendants raise eight objections to Hartwick's claims:  (1) plaintiff's challenges to the search and his arrest for parole violations run afoul of the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) plaintiff's claim under the New York constitution is foreclosed by N.Y. CORR. LAW § 24; (3) plaintiff has failed to allege the personal involvement of the Board, Annucci, Enright, Wright, Green and Rigby; (4) plaintiff has failed to state a claim as to counts five and six because he has not alleged any enforcement actions; (5) absolute immunity protects all defendants; (6) plaintiff's guilty plea to his charged parole violations establishes probable cause, barring his Fourth Amendment claims; (7) plaintiff has

failed to state a claim for his alleged Fourth Amendment violations in any case; and

(8) plaintiff is collaterally estopped from challenging his special condition.

### A.  New York Corrections Law § 24.

Defendants argue that N.Y. CORR. LAW § 24 precludes this Court from considering

Hartwick's Count (2) claim for an illegal search in violation of Article 1, § 12 of New York's

constitution.[5]  Nowhere in his response does Hartwick dispute that "N.Y. CORR. LAW § 24

exclusively vests jurisdiction of state law claims against DOCCS employees in the New York

Court of Claims."  *Fontaine v. Cornwall*, 2019 WL 4257136, at *4 (N.D.N.Y. Sept. 9, 2019).

Because Hartwick has thus failed to carry his burden of establishing this Court's

jurisdiction, his Count 2 claim for illegal search must be dismissed.  *Aurecchione*, 426 F.3d at

638.  Moreover, because plaintiff cannot cure an obvious jurisdictional defect through

repleading, any attempt for plaintiff to amend his Count Two claim would be futile, and that

dismissal must be with prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)

(noting that dismissal with prejudice in the absence of opportunity to amend is proper if

amendment would be futile).

### B.  *Heck v. Humphrey.*

In *Heck v. Humphrey*, the Supreme Court ruled that a plaintiff hoping to recover

damages under § 1983 for an unconstitutional conviction or imprisonment "must prove that

the conviction or sentence has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal . . . , or called into question by a federal court's issuance of

a writ of habeas corpus[.]"  512 U.S. 477, 486-87 (1994).  In so doing, the *Heck* Court carved

out "an implicit exception from § 1983's otherwise broad scope for actions that lie within the

---

[5] Although defendants lead their memorandum of law by arguing *Heck v. Humphrey*, 512 U.S. 477 (1994), precludes plaintiff's claim, the Court will nevertheless begin, as it must, by assessing its jurisdiction to consider plaintiff's Count 2 claim.  *See Saleh*, 84 F. Supp. 3d at 138 (noting that subject matter jurisdiction is threshold issue that must be considered before argument of failure to state claim).

core of habeas corpus" relief.  *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal citations

and quotation marks omitted).  Functionally, *Heck* cashes out to precluding § 1983 plaintiffs

from using that statute to collaterally attack a criminal conviction.  *Waller v. Smith*, 403

F. Supp. 3d 164, 169 (W.D.N.Y. 2019).

Of course, as is often the case with exceptions to rules intended toward breadth,

courts have since developed limitations to *Heck*'s scope.  One crucial limitation is that *Heck*

only bars a plaintiff if success on his § 1983 claim "would *necessarily* result in the nullification

of his conviction or the shortening of his confinement."  *McKithen v. Brown*, 481 F.3d 89, 101

(2d Cir. 2007).  For example, a § 1983 claim challenging a search that would, if invalidated,

merely increase the likelihood that a plaintiff would be able to overturn a conviction  will still

be possible notwithstanding *Heck* so long as the overturn of the conviction is not a necessary

consequence.  *Id.* at 102.

Additionally, this Circuit recognizes a second exception that *Heck* cannot bar a claim if

habeas corpus remedies are not available.  *See Jenkins v. Haubert*, 179 F.3d 19, 27

(2d Cir. 1999) (holding that some federal remedy "must be available" and if habeas corpus is

not, it must be § 1983); *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (same).  Typically,

habeas corpus will not be available to challenge a parole revocation after the would-be

petitioner's term of imprisonment resulting from the revocation has ended.  *Spencer v.*

*Kenma*, 523 U.S. 1, 8, 18 (1998) (ruling that habeas corpus petition challenging parole

revocation after conclusion of imprisonment was moot).

But despite those few exceptions, "[n]o court has recognized an exception to *Heck*'s

bar" when a plaintiff could have filed a habeas corpus petition while incarcerated, yet "waited

more than a year" until his incarceration concluded and only then brought a claim for

damages. *Teichmann v. New York*, 769 F.3d 821, 828 (2d Cir. 2014) (Livingston, J., concurring).

Defendants argue that Hartwick's claims under Counts One, Three, and Four are all *Heck*-barred.[6]  Of course, to determine whether that is the case involves pulling apart the factual predicate for each of plaintiff's claims in turn.  Plaintiff's Count 1 claim alleges that Gronau, Hodson, Orsaio, and Palmer "conduct[ed] an arbitrary and capricious search" based only on a polygraph test which they falsely claimed that he failed.  Compl. ¶ 66.

Because Hartwick's claim involves a search, the central question as to this claim's vitality in light of *Heck* is whether a finding for plaintiff would necessarily result in the nullification of his parole revocation.  *McKithen*, 481 F.3d at 101.  But courts in this Circuit have consistently held that a § 1983 claim is *Heck*-barred if it challenges the sole search that provided the entirety of the evidence supporting a criminal charge.  *See, e.g.*, *Waller*, 403 F. Supp. 3d at 170 (collecting cases for proposition that "[§] 1983 actions targeting a single episode involving a single search, if successful, would necessarily demonstrate the invalidity of a conviction based on that search").

The cell phone Hartwick's parole officers discovered upon searching his home formed the entire basis of his parole revocation.  If there were no phone, there would be no parole revocation.  If there were no search, there would be no phone.  Accordingly, a holding that the September 8, 2017 search violated plaintiff's rights would, by necessity, undermine his parole revocation.  Accordingly, unless it fits within another exception, plaintiff's Count One claim for an illegal search in violation of the Fourth Amendment is barred by *Heck*.  *Waller*, 403 F. Supp. 3d at 170.

---

[6] Defendants argue the same for Count 2, but because the Court lacks jurisdiction over that claim in any case, that argument is moot.

Hartwick's third count charges the same defendants with violating his first amendment rights by enforcing the unlawful special condition prohibiting him from using an internet-capable device.  Compl. ¶¶ 31, 74.  It goes without saying that any eventual outcome holding that defendants violated plaintiff's constitutional rights by even bringing his parole revocation charges in the first place would by necessity invalidate his eventual conviction.  Accordingly, plaintiff's claim under Count Three is similarly within *Heck*'s ambit.

However, the analysis for Hartwick's Count Four tells a different tale.  At first blush, plaintiff is asserting a Fourth Amendment claim arising from his being arrested for the same parole revocation that sounds the root note for his other claims.  But unlike those other claims, plaintiff does not appear to be disputing the authority of his parole officers to arrest him under the internet condition.  If he were, that claim would be *Heck*-barred much like the rest.  Instead, he is claiming that he did not "present a flight risk" or "any other exigent circumstance" that required him to be arrested and placed in jail, and apparently it is not the justifiability of the arrest but its necessity that plaintiff is challenging.  Compl. ¶ 78.  Count Four of plaintiff's complaint is thus entirely independent from his contentions concerning the validity of his parole revocation and is not barred by *Heck*.

Of course, simply because Counts One and Three are of the sort that *Heck* typically precludes does not mean that it does in this case.  In particular, Hartwick argues that his claims are excepted from *Heck* because he cannot challenge a parole revocation through habeas corpus after being released from prison absent a showing of collateral consequences.  Particularly, he argues that the eighteen months that he spent in prison for his violation of the internet condition was too short a time for him to avail himself of habeas corpus.

The caselaw of this Circuit does not support Hartwick's position.  Several courts nationwide have rejected the ability of a plaintiff to endure his prison term, never pursue a meaningful challenge to his conviction, and then seek monetary damages after being released.  *See, e.g.*, *Opperisano v. P.O. Jones*, 286 F. Supp. 3d 450, 461-63 (E.D.N.Y. 2018) (collecting cases to support dismissing claim as *Heck*-barred because plaintiff had full year to bring habeas corpus petition and failed to do so).  Moreover, his delay cannot be excused because he lacked the time to make a challenge given that all would-be habeas corpus petitioners are tasked with exhausting their administrative remedies and filing a habeas corpus petition within one year of their parole revocation becoming final.  *See Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 280-81 (2d Cir. 2003).  Accordingly, plaintiff cannot use the exception of habeas corpus's unavailability to skirt past *Heck*'s holding when his term of imprisonment outlasted the timeframe in which he even could have brought a habeas corpus petition by six months.

*Heck*'s applicability to Hartwick's case is nevertheless complicated by the fact that he alleges that his underlying PRS condition has since been found unconstitutional through an Article 78 hearing.  Compl. ¶ 60.  Though he did not make this argument in defense of his motion, plaintiff could have argued that because his underlying condition has been "declared invalid by a state tribunal", he is thus sheltered from *Heck*.  512 U.S. 487.  However, even had he made that argument, it would not have succeeded.  After all, whether the conditions were legal or not, they were still in effect at the time that he pled guilty to violating them.  That he alleges they are now invalid does not change that he violated them back when they remained in force.

In other words, Hartwick's Article 78 proceeding did not challenge his conviction itself, it challenged the special condition's continuing application to him.  Accordingly, his conviction

still has not been declared invalid by a state tribunal.  His conviction itself remains

unchallenged because plaintiff failed to use any of the tools—such as habeas corpus—

available to him to challenge it prior to his release.

Accordingly, because Hartwick has not demonstrated that his conviction for violating

his conditions has been expunged or otherwise invalidated, his claims under Counts:

(1) Fourth Amendment claim against Gronau, Hodson, Orsaio, and Palmer; and (3) First

Amendment claim against defendants Annucci, Claudio, Gronau, Hodson, Orsaio, Palmer,

and Gavras; must be dismissed as precluded by *Heck*.  *See, e.g.*, *Opperisano*, 286

F. Supp. 3d at 461-63.

### C.  Sufficiency of Plaintiff's Count IV § 1983 Claim Under the Fourth Amendment.

Defendants also argue that Hartwick's Count Four failed to state a claim for which

relief may be granted.  Defendants are correct, though not for the reasons they advance.

Again, defendants approach Count Four as if it were attacking their authority to arrest him.

That does not seem to be plaintiff's contention.  Instead, he seems to be arguing not that

defendants were not lacking in authority to make the arrest, but that arresting him was

unnecessary.  Nevertheless, the Second Circuit has made it clear that "the Fourth

Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a

misdemeanor seatbelt violation punishable only by a fine."  *United States v. Bernacet*, 724

F.3d 269, 277 (2d Cir. 2013) (internal citations and quotation marks omitted).

Accordingly, "probable cause regarding a [New York State parole] violation that, if

proven, could result in the loss of liberty provides sufficient grounds for a constitutional

warrantless arrest." *Bernacet*, 724 F.3d at 279.  Hartwick has by extension failed to establish

any Fourth Amendment claim stemming from his arrest for his parole violation, and that claim must also be dismissed.[7]

### D.  Absolute Immunity for Parole Decisions.

Defendants next argue that the Board defendants are protected by absolute immunity from Hartwick's Count Five claim that they violated his First Amendment rights by imposing the special condition prohibiting him from owning an internet-capable device.  To defendants' point, "[a] limited number of officials are entitled to absolute immunity from § 1983 damages liability for their official acts."  *Scotto v. Almenas*, 143 F.3d 105, 110 (2d Cir. 1998).  However, because qualified immunity is generally preferred to absolute immunity because of the latter's capacity to undermine § 1983's constitutional protections, "[a]bsolute immunity is proper only in those rare circumstances where the official is able to demonstrate that the application of absolute immunity to the circumstances presented is required by public policy."  *Id.*

Absolute immunity thus comes to bear only after a district court weighs two factors: (1) "the need for absolute immunity . . . to permit the effective performance of the [official's] function"; and (2) "the existence of safeguards against improper performance."  *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir. 1987).  "Functions most apt to be accorded absolute, rather than qualified, immunity are those integrally related to the judicial process."  *Id.*  By extension, "the level of immunity flows not from rank or title or location within the Government, but from the nature of the [official's] responsibilities."  *Scotto*, 143 F.3d at 110 (internal citations and quotation marks omitted).

Guided by these immunity principles, the Second Circuit has held that "a parole board official is absolutely immune from liability for damages when he decides to grant, deny, or

---

[7] Once again, assuming that plaintiff actually intended to challenge the legitimacy of defendants' power to arrest him for violating an unlawful condition, that claim would be subject to dismissal under *Heck* for the same reasons as discussed concerning Counts One and Three.

revoke parole, because this task is functionally comparable to that of a judge." *Scotto*, 143 F.3d at 110 (internal citations and quotation marks omitted).  For similar reasons, "[a]bsolute immunity has also been extended to parole officials for the imposition of parole conditions and the execution of parole revocation procedures[.]"  *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir. 2004).

However, courts in this Circuit have typically recognized that although a parole board's decision to impose special conditions may be an adjudicative exercise, it may also be an administrative one, and thus void of any discretion on the parole official's part.  *See, e.g.*, *Farrell v. Burke*, 1998 WL 751695, at *4 (S.D.N.Y. Oct. 28, 1998) (declining to dismiss claim on basis of absolute immunity in absence of evidence demonstrating whether special condition was quasi-judicial or administrative function); *but see Stewart v. Smallwood*, 1993 WL 77381, at *1 (S.D.N.Y. Mar. 15, 1993) (Sotomayor, J.) (finding parole board officials absolutely immune without further inquiry).

On that last point, Hartwick argues that the Board defendants did not exercise any discretion and its members were statutorily obligated to impose the allegedly unconstitutional parole condition.  Though plaintiff attached an exhibit to his opposition in support of his argument, delving into the factual realities of the board's determination would push review beyond the confines of deciding defendants' Rule 12(b)(6) motion.  Instead, it is enough to say that the complaint can fairly be read to allege that the Board defendants did not exercise discretion in imposing the challenged condition on plaintiff, and any ruling to the contrary would require a factual inquiry beyond the scope of this motion.  Accordingly, the Court cannot apply absolute immunity to the Board defendants at this juncture.

Defendants also argue that the non-board defendants should be entitled to absolute immunity for charging plaintiff with a parole violation.  For that point, defendants again rely on

*Scotto*, which held that "[p]arole officers also receive absolute immunity for their actions in initiating parole revocation proceedings and in presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature."  143 F.3d at 112.  However, once again the parole officer must have discretion in initiating that parole revocation proceeding. *Id.*

To the extent defendants argue that Count Three alleges a claim against defendants for prosecuting a parole violation, that argument is moot because Count Three has already been dismissed.  But to the extent that defendants argue that absolute immunity protects Wright, Green, Rigby, Annucci, and Enright from Count Six, absolute immunity cannot attach, at least at the motion to dismiss stage.

Defendants want to paint Hartwick's Count Six as a claim against Wright, Green, Rigby, Annucci, and Enright based on their capacity to have brought a parole revocation proceeding.  But defendants misread this claim.  Plaintiff is not objecting to the potential legal consequences of the condition.  Plaintiff is objecting to the restriction on his First Amendment freedoms that accompanied his need to comply with a parole condition that he believed was unconstitutional but that these defendants nevertheless would have enforced.

That enforcement includes, according to the complaint, continuing to tell Hartwick that he would not be permitted to have a phone even after the Article 78 court ruled that condition to be unconstitutional.  Compl. ¶ 61.  Informing plaintiff that he will not be permitted to exercise a right to which he appears to be entitled does not qualify as a prosecutorial act in the vein of filing parole revocation charges, and thus at least a portion of plaintiff's claim against these defendants is not barred by absolute immunity at this time.

**E.**  **Sufficiency of Plaintiff's First Amendment Claims Under Counts V and VI.**

Defendants next argue that Hartwick's First Amendment claims under Counts Five and Six are insufficiently pled, because he has failed to identify an enforcement action deriving from the PRS prohibiting internet usage before that condition was repealed by the Article 78 court on July 19, 2019.  However, as was just discussed, plaintiff alleges that defendants continued to tell him that he would not be permitted to own an internet device until August 27, 2019.  Compl. ¶¶ 61, 63.  Although defendants are correct that plaintiff faced no formal discipline, that is not the right for which he seeks redress.

Rather, Hartwick alleges that defendants deprived him of his First Amendment right to access the internet while continuing to impose an unlawful condition.  Because defendants allegedly told plaintiff he would not be able to purchase a phone, he has plausibly alleged that defendants deprived him of his First Amendment rights to access the internet.  *See Packingham*, 137 S. Ct. at 1736-37 (ruling that depriving plaintiff of right to access social media violated First Amendment).

**F.**  **Personal Involvement.**

Next, defendants argue that Hartwick has failed to allege that the Board defendants, as well as Annucci, Enright, Wright, Green, and Rigby, were personally involved in any deprivation of his constitutional rights.  "[I]t is well[-]settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (internal citations and quotation marks omitted).

Moreover, individual liability under § 1983 may not be based on vicarious liability, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989), but must instead flow from a supervisor's personal involvement in the alleged constitutional deprivation, *Johnson v. Newburgh*

*Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001).   A supervisor may nevertheless be personally involved in a constitutional violation if he created a policy or custom—or allowed the continuance of such a policy or custom—under which unconstitutional practices occurred. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Defendants first argue that Hartwick has not adequately alleged that any one particular Board defendant imposed the allegedly violative PRS condition on him.  In support of that argument, defendants note that New York's regulations for setting special conditions provide that "[e]ach special condition may be imposed by a member or members of the Board of Parole," and thus it is possible that only one of the Board defendants actually decided to impose the allegedly unlawful condition.  9 N.Y.C.R.R. § 8003.3.

The problem with defendants' argument in the motion to dismiss context is that Hartwick need only plausibly allege personal involvement against each of the Board defendants.  By necessary operation of New York's regulations, at least one of the Board defendants imposed the challenged special condition on him, and perhaps all of them did.  It is therefore plausible that any or all of the Board defendants imposed the condition and may ultimately be found liable.  If, at the close of discovery, plaintiff has still failed to determine which member of the Board imposed the condition, then defendants may point to that failure, but for now plaintiff has adequately alleged personal involvement by the Board defendants. *Iqbal*, 556 U.S. at 678 (requiring plaintiffs to state claims that are plausible on their face).

To the extent that defendants argue that the Board itself would have been the proper defendant, its own cited regulation belies that argument.  It is the "member or members" of the Board that are tasked with imposing special conditions, not the Board itself. 9 N.Y.C.R.R. § 8003.3.  Thus, Hartwick properly named the Board defendants, and his claims against them cannot be dismissed for a lack of personal involvement.

Defendants also argue, however, that Hartwick has failed to allege personal involvement on the part of defendants Wright, Green, Rigby, Annucci, and Enright as well. As for defendants Wright, Rigby, Annucci, and Enright, that argument is similarly unavailing. Plaintiff alleges that Rigby told plaintiff that defendants would continue to enforce the internet device condition, regardless of the Article 78 court's determination. Compl. ¶ 61. Moreover, plaintiff has alleged that Annucci, Enright, and Rigby instituted a policy requiring that all probation officers would continue to enforce conditions such as the one that plaintiff was subjected to. *Id.* ¶ 57. Although perhaps not the gold standard of pleading personal involvement, plaintiff's allegations against Annucci, Enright, and Rigby are as close as he could be expected to come to pleading an infringing custom or policy in the absence of discovery. Accordingly, plaintiff's claims against those defendants must survive.

As for defendant Wright, defendants have once again failed to demonstrate that Hartwick's claims against him cannot survive. Plaintiff has alleged that Wright is his current parole officer, and thus it can be reasonably inferred that Wright in particular was among the officers to inform plaintiff that he continued to be incapable of owning a phone after his release from confinement for his parole violation. Compl. ¶ 56. Because "all reasonable inferences" must be made in plaintiff's favor, plaintiff's Count Six claim against Wright cannot be dismissed for a lack of personal involvement. *Ginsburg*, 839 F. Supp. 2d at 540.

However, Hartwick's claim against Green is not so vital. Plaintiff's only allegation against Green is that he "personally enforced" plaintiff's allegedly unconstitutional PRS condition as Wright's supervisor. Compl. ¶ 56. That lone allegation cannot be enough. Plaintiff has at least alleged a direct connection between himself and Wright and Rigby, but he has not alleged that Green so much as knows his name, let alone took an active role in

infringing his constitutional rights.  Accordingly, plaintiff's claims against Green must be dismissed for failure to adequately plead personal involvement.

### G. Collateral Estoppel.

Defendants' final remaining argument is that Hartwick is collaterally estopped under the principles of *res judicata* from asserting any challenge to his parole conditions because he already unsuccessfully appealed those conditions.  Compl. ¶ 49.  "Under both New York and federal law, the doctrine of . . . claim preclusion[ ] provides that a final judgment on the merit of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (cleaned up and internal citations and quotation marks omitted). Ultimately, "[i]f a valid and final judgment has been entered on the merits of a case, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* at 196 (internal citations and quotation marks omitted).

Claim preclusion only comes into play where "the parties [are] the same as those in the first action or persons in privity with them." *See Pricaspian Dev. Corp. (Texas) v. Royal Dutch Shell, PLC*, 382 F. App'x 100, 104 (2d Cir. 2010) (summary order).  But even still, "the same parties, similar legal issues, similar facts, or essentially the same type of wrongful conduct is not dispositive." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).

It is unclear, at this juncture, who would have been a party to Hartwick's appeal of his conviction.  For that reason alone, defendants have not proven that claim preclusion compels this Court to dismiss plaintiff's claims.  Moreover, because plaintiff's appeal only concerned his conviction for a parole violation, the Court is similarly in the dark as to what issues would have been even capable of consideration, let alone which issues were actually actively

raised, at that appeal.  The Court therefore cannot determine that claim preclusion blocks plaintiff's claim at the Rule 12(b)(6) stage.

Alternatively, even if a claim is not precluded in its entirety, a specific issue may nevertheless be subject to collateral estoppel, or issue preclusion.  The Second Circuit requires four elements for issue preclusion:  (1) the issues in the prior and present action must be identical; (2) the issue in the prior proceeding must have been actually litigated and decided; (3) the party against whom preclusion is sought must have had a full and fair opportunity for litigation in the prior proceeding; and (4) the issue litigated must have been necessary to the final judgment on the merits of the prior proceeding.  *See Faulkner v. Nat'l Geographic Enters.*, 409 F.3d 26, 37 (2d Cir. 2005).

As for issue preclusion, defendants' argument fares no better.  Issue preclusion requires an identity of issues that is lacking in this case, because plaintiff specifically states that his appeals "did not address the constitutionality of [his PRS] condition."  Compl. ¶ 49. Accordingly, plaintiff's claims under Counts Five and Six are not barred by either variety of *res judicata*, and plaintiff's remaining claims must survive.

## V.   <u>CONCLUSION</u>

Hartwick's complaint lives in the interstice between the civil and the criminal realms. As might be expected from its abiding in such embattled territory, its ability to state a valid civil claim despite the pressing need to maintain the finality of criminal proceedings is uneven. Nevertheless, plaintiff has successfully stated a plausible First Amendment claim against the Board defendants, as well as defendants Wright, Rigby, Annucci, and Enright.  The complaint must therefore proceed to discovery on Counts Five and Six as to those defendants. Similarly, plaintiff's Count Seven claim for punitive damages must still survive.

Therefore, it is

ORDERED THAT

1.  Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART;

2.  Counts One, Two, Three, and Four are DISMISSED;

3.  Count Six is DISMISSED as to defendant SPO Green;

4.  All claims against Defendants Robert Hodson, Tammy Gronau, Regina Orsaio, Kenneth Palmer, Jason W. Gavras, Steven Claudio, and SPO Green are DISMISSED;

5.  Count Five for a First Amendment violation against defendants Tina Stanford, Walter William Smith, Joseph P. Crangle, Ellen Evans Alexander, Marc Coppola, Otis Cruse, Tana Agostini, Erik Berliner, Tyece Drake, Caryne Demosthenes, Charles Davis, and Carol Shapiro remains.

6.  Count Six for a First Amendment violation against defendants Michael Wright, Paul Rigby, Anthony Annucci, and Ana Enright remains; and

7.  Defendants Tina Stanford, Walter William Smith, Joseph P. Crangle, Ellen Evans Alexander, Marc Coppola, Otis Cruse, Tana Agostini, Erik Berliner, Tyece Drake, Caryne Demosthenes, Charles Davis, Carol Shapiro, Michael Wright, Paul Rigby, Anthony Annucci, and Ana Enright are directed to respond to Counts Five, Six, and Seven of the complaint no later than Wednesday, December 2, 2020.

IT IS SO ORDERED.

Dated:  November 18, 2020
        Utica, New York.

David N. Hurd
U.S. District Judge